UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LILLIAN HAYDEN, ET AL. | * | NO. H-92-1054 |
| Plaintiffs | * | |
| VERSUS | * | JUDGE HUGHES |
| ATOCHEM NORTH AMERICA, INC., ET AL | * | |
| Plaintiffs | * | |

* * * * * * * * * * * * * * * * * * * *

## DEFENDANT'S PROPOSAL REGARDING DISTRIBUTION OF THE REMAINING SETTLEMENT FUNDS

Defendant, Arkema, Inc. (formerly known as Elf Atochem North America, Inc.)("Arkema"), respectfully requests that the Court allocate all or part of the remaining class action settlement funds in this case to (1) an escrow account that is available to settle back-end opt out personal injury claims subject to Court approval, and/or (2) fund additional scholarships in the existing New Horizons Scholarship Fund, which provides college scholarships to Bryan-area high school students, and/or (3) assist in funding construction of a pavilion at the newly developed Gloria Stephan Sale Park in downtown Bryan.

Based on the Settlement Administrator's December 18, 2008 Report, Arkema understands that approximately $500,000 or more will most likely remain in the settlement fund created by the class action settlement in this case.[1] Class settlement funds frequently contain residual monies left over after distribution of the planned settlement benefits. *See e.g., Jones v. Nat'l Distillers*, 56 F.Supp.2d 355 (S.D.N.Y. 1999); *Superior Beverage Co. v. Owens-Illinois,*

---

[1] Based on the Settlement Administrator's December 2008 report, $1,102,202.77 remains in the Settlement Fund but there are $544,879.69 in uncashed checks. Various additional expense reductions were approved by the Court in its December 18, 2008 order and additional efforts will be made by the Settlement Administrator to distribute the uncashed amounts, but it appears likely that the remainder funds will ultimately be in the range indicated above.

1

*Inc.*, 827 F.Supp. 477 (N.D. Ill. 1993). Federal courts typically use the cy pres doctrine to distribute the remaining funds. *Id.* The cy pres doctrine directs that the best use of remaining funds is "for purposes that are closely related to their origin" and that closely approximate the underlying purpose of the class settlement. *Jones*, 56 F.Supp.2d at 359. Where a use that is closely aligned with the purpose of the original settlement is not available, the federal court has broad equitable powers to use the funds for other public interest purposes. *Id.* Again, those public interest purposes are ideally ones that benefit the class members and their community. *Id.* With those general principles in mind, Arkema proposes that the following three uses of the remaining funds are in excellent alignment with the original purpose of the *Hayden* class action settlement.

**Escrow for Backend Opt-Out Settlements**

The *Hayden* class settlement paid monetary damages to three separate subclasses: (i) Subclass A, which consisted of manifested personal injury claims, (ii) Subclass B, which consisted of exposure-only injury claims, and (iii) Subclass C, which consisted of real property damage claims. *See* Class Action Settlement Agreement, at p. 5-6. Under Subclass A, the class settlement provided monetary benefits to persons who (i) could demonstrate residence or work history within the class area during the class period, and (ii) had one of the listed diseases or health conditions. *Id.* The listed diseases and health conditions included: cancer, pregnancy ending in still birth, and a range of birth defects. *Id.*

For persons who were first diagnosed with cancer or a birth defect after final approval of the class settlement on December 6, 2000, the settlement includes a back-end opt-out right. *Id.* at 7-11. Importantly, however, the back-end opt-out contains a threshold requirement that the claimant must prove that his or her claim satisfies Texas law on general causation as set out in

*Havner v. Merrill Dow Pharm.*, 953 S.W.2d 706 (1997).[2] *Id.* at 8. Under most circumstances, this Court will have exclusive jurisdiction to hear that threshold inquiry to the back-end opt-out right. *Id.* at 9. Thus, if there are future back-end opt out attempts, they likely will be addressed by this Court.

One of the primary purposes of the *Hayden* class settlement was to provide monetary benefits for cancer and birth defect claims. Accordingly, the use of the remaining settlement funds that is most closely aligned with the original purpose of the settlement is to complete this process and compensate any viable claims that have appeared in the class population since the original settlement. Arkema proposes a program that would utilize the remaining class settlement fund to settle back-end opt-out cancer and birth defect claims that (i) had not manifested themselves at the time of the entry of the final judgment, (ii) otherwise meet the criteria for Subclass A claims, and (iii) meet the back-end opt out threshold causation criteria described above.

Management of an interest bearing escrow fund and the settlement process could be accomplished in a number of ways. First, if he is willing, the Settlement Administrator could fill this function. A matrix was developed for class claims based on similar injuries as part of the original class settlement benefit distribution, and Mr. Crowley is most familiar with the implementation of that matrix. Alternatively, Arkema is willing to manage the escrow and settlement process with oversight and approval of all settlements and disbursements by the Court. Arkema is willing to bear the administrative costs associated with management of the escrow and settlement process. These details could be fleshed out at the Court's direction if this

---

[2] At the risk of oversimplifying a very complex opinion, the essence of the *Havner* holding is that the plaintiff in a toxic tort case must be able to demonstrate based upon reliable epidemiological studies that there is at least a doubling of his or her risk for development of the relevant disease based on his or her actual exposure to the alleged toxin to overcome a "no evidence" motion for summary judgment. *Havner*, 953 S.W.2d at 717-18; 720.

3

use of the remaining settlement funds is accepted. Arkema believes that an escrow period for back-end opt out payments should extend for 5 years or until the excess funds are exhausted, whichever comes first. If funds remain after 5 years, then they could be donated to a suitable Bryan-area charity, such as the New Horizon scholarship program described below.

**Funding for the New Horizon Scholarship Program**

In the event that the Court determines that all or part of the remaining settlement fund should not be reserved for potential back-end opt out claims, Arkema believes that a donation of half the remaining funds to the currently existing New Horizons Scholarship Fund ("New Horizons") would be an excellent alternative. New Horizons is a community-based program that raises money to provide scholarships to Bryan and College Station high school students based on financial need combined with good academic performance. The attached declaration by Bill Turner, who is the Brazos County District Attorney and Vice President of the New Horizons Scholarship Fund Board of Directors, provides a brief summary of the scholarship program. *See* Exhibit A, Declaration of Bill Turner.

In every community there are a number of students that have the ability to go to college but are unable to attend because of a lack of resources. The New Horizons Scholarship Fund was created to meet that need in Brazos County. *Id.* Every year approximately 30 juniors are identified by high school counselors as worthy candidates to be considered for a New Horizons scholarship. *Id.* The family income of the student is verified through records of the free and reduced lunch programs at the two Brazos County high schools. *Id.* The students submit an essay, a transcript of their grades, and letters of recommendation from two teachers. *Id.* The applications are evaluated and approximately 20 students receive a $1,000 or $2,000 scholarship. *Id.* The awards are made during the junior year to encourage the students to stay in school,

4

graduate, and go to college. *Id.* The scholarship is generally paid directly to the college to help defray the cost of tuition. *Id.* The program has been successfully assisting Brazos County high school students attend college since 1993. *Id.* Administrative costs of the program are kept low (less than 1% of disbursements). *Id.* While Arkema has contributed money to this program in the past as part of an agreement with the Texas Commission on Environmental Quality, New Horizons is not affiliated with Arkema and Arkema receives no financial benefit from it. *Id.*

Additional funding for this existing, successful program is a worthy use of the remaining *Hayden* settlement funds. It will also directly benefit the community that includes the *Hayden* class members. This kind of charitable donation is consistent with the cy pres principles outlined above.

**Funding for the City of Bryan to Construct a Park Pavilion**

In the event that the Court determines that all or part of the remaining settlement fund should not be reserved for potential back-end opt out claims, Arkema believes that a donation of half the remaining funds to the City of Bryan to construct a pavilion at the newly constructed Gloria Stephan Sale Park in downtown Bryan would also be an excellent alternative. This park is within the settlement class geographical area -- a short distance north of the manufacturing facility site within the Bryan downtown area. The City of Bryan purchased the park site from Union Pacific Railroad, and completed Phase 1 of the construction including sidewalks and landscaping during the summer of 2008. The park is already an important part of the Bryan community and the addition of a pavilion would greatly enhance the utility of this important public asset. The declaration of David Watkins, the Bryan City Manager, provides a description of the park and the pavilion project. Mr. Watkins' declaration is attached as Exhibit B. Arkema

has no financial interest in Gloria Stephan Sale Park and will not receive any financial benefit from the construction of the proposed pavilion project.

## CONCLUSION

Arkema respectfully requests that the Court consider utilizing the remaining funds in the *Hayden* class settlement fund to either (1) compensate back-end opt out claims for alleged cancer and birth defect claims that would otherwise be classified as Subclass A claims under the settlement protocol and meet the back-end opt out causation proof criteria, and/or (2) fund additional college scholarships to low income deserving Brazos County high school students under the New Horizon Scholarship program, and/or (3) assist in funding the construction of a pavilion at Gloria Stephan Sale Park in downtown Bryan, Texas.

Respectfully submitted,

*/s/ Lewis C. Sutherland*
Lewis C. Sutherland
**VINSON & ELKINS L.L.P.**
2500 First City Tower
1001 Fannin St.
Houston, TX 77002-6760
Telephone: 713-758-2367
Facsimile: 713-615-5332
*Counsel for Arkema, Inc. (f/k/a Elf Atochem North America, Inc.)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the parties and counsel who are filing users, and that service was accomplished on other counsel included in the Settlement Administrator's email distribution on November 24, 2009.

*/s/ Lewis C. Sutherland*
Lewis C. Sutherland